THOMAS G. CHAMBERLAIN et al., as Successor Trustee under the Will of SAMUEL L. CLEMENS, Deceased, et al., Plaintiffs, *v.* LEW D. FELDMAN et al., Defendants.

Supreme Court, Special Term, New York County, January 13, 1948.

*Alexander S. Andrews* for plaintiffs.

*Allan Hyman* for defendants.

STEUER, J. The law in this case is admirably clear. But few of the salient facts remain capable of proof. The defendants purchased an original and hitherto unpublished manuscript by Samuel L. Clemens, the revered and gifted Mark Twain. This manuscript was purchased at an auction of the effects of the late Mary Heye Clemens. Mrs. Clemens received the manuscript by devise from her husband, Dr. James B. Clemens, who apparently was a notable collector of manuscripts and first editions. As far as is known he was not related to the author. When or how he procured the manuscript could not be established.

The plaintiffs comprise all the persons who succeed to any literary rights which the author may have had. They seek to prevent publication of the manuscript. The following propositions appear currently indisputable. The transfer of the title to a writing does not necessarily involve a transfer of the publication rights. A transfer of such rights will be presumed from a transfer of title unless there is a specific reservation in the act of transfer (*Pushman* v. *New York Graphic Society*, 287 N. Y. 302). Plaintiffs made a diligent and extensive effort to show the history of this manuscript in an effort to establish that it had never been transferred by the author but at many crucial junctures the trail disappeared. The manuscript is entitled " A Murder, a Mystery and a Marriage ". A writing under that title is referred to in correspondence between Clemens and William Dean Howells in 1876. Howells was then the editor of the *Atlantic Monthly* and Clemens suggested to him the idea of having the same plot developed into a story by several of the leading authors of the day. He submitted a manuscript under the above unwieldy name as the plot. The plan never materialized, perhaps because, as Clemens suggested in one of

the letters, the plot was not suitable for a short magazine story. Clemens proposed writing another plot. If this was all that Clemens did, there was no transfer. The files of the *Atlantic Monthly* today show no record of the receipt or the disposition of any such manuscript. An attempt was made to prove a memorandum receipt mentioning a manuscript under this title which receipt turned up in a collection of literary curiosities offered for sale by a dealer in Massachusetts. The paper could in no way be authenticated. It purported to be from Dodd Mead & Co. to a dealer named Ayer. Ayer is dead and no record survives him. Dodd Mead & Co. have long since abandoned dealing in rare books and manuscripts, their records of such transactions have been destroyed and the men who conducted them are dead.

It is plaintiffs' theory that the manuscript was submitted to Howells not for publication but merely for the purpose of having others adapt the plot to their own style and that Clemens would then either submit it as his own treatment of the theme or rewrite it as a more finished product. They then claim that the manuscript became lost or stolen, possibly at the time of some change of management at the *Atlantic Monthly,* came into the hands of Ayer, passed from him to Dodd Mead & Co., thence to Dr. Clemens and the defendants. This is pure conjecture. It is by no means certain that this manuscript is the one submitted to Howells. It may well be the rewritten story which Clemens anticipated in his letter. The only possible conclusion is that despite unusual and intelligent efforts plaintiffs have failed to show any facts about the original disposition of the manuscript by the author. Under these circumstances it must be presumed that its transfer was legal and that all rights in connection with it have passed to defendants, the ultimate purchasers.

The complaint is dismissed.